[Cite as *State v. Holt*, 2019-Ohio-4685.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2019 CA 0025 |
| SAGI S. HOLT | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Richland County Court of Common Pleas, Case No. 2018-CR-688

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    November 12, 2019

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
Richland County, Ohio

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

For Defendant-Appellant

JAMES L. BLUNT, II
3954 Industrial Parkway Drive
Shelby, Ohio  44875

*Hoffman, J.*

{¶1}  Appellant Sagi S. Holt appeals the judgment entered by the Richland County Common Pleas Court convicting him of having weapons under a disability (R.C. 2923.13(A)(3)), tampering with evidence (R.C. 2921.12(A)(1)), four counts of aggravated possession of drugs (R.C. 2925.11(A),(C)(1)(a)), and one count of possession of drugs (R.C. 2925.11(A),(C)(2)(a)), and sentencing him to a term of incarceration of 90 months. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}  On August 1, 2018, Officer Joseph Gladden of the Mansfield Police Department received a message from dispatch a person named Charity Griffith, who had an active warrant for her arrest, had been dropped off at a residence next to 404 Newman Street in Mansfield, Ohio.  Officer Gladden first went to 406 Newman Street, where he spoke to Jonathan Risser.  Risser told the officer several hours earlier, Griffith had stopped at his house to call Appellant.  He directed Gladden to 398 Newman Street.

{¶3}  As Officer Gladden went to the front door of 398 Newman Street, the blinds were open, and he saw Griffith inside.  Upon seeing the officer, Griffith ran through the house.  Through the living room window, the officer could see a mirrored dish on a coffee table, with a syringe and baggies sitting on it.  He knocked on the door and announced his presence.

{¶4}  No one answered the door.  Officer Gladden moved to another window and looked inside the house.  He saw Appellant with his back up against the wall next to the front door, as if he was trying to hide from the officer.  The officer spoke to Appellant through the window, telling Appellant he was there for Griffith and knew she was in the house.  Appellant agreed to send Griffith out.

{¶5} Officer Gladden went back to the front door, but noticed the blinds were now closed. Officer Gladden called inside to ask Appellant for his name. Appellant asked why the officer wanted his name. The officer responded he noticed drug paraphernalia on the table when he looked in the window. Appellant said there was nothing there, and opened the blinds slightly to show the officer the items were gone.

{¶6} After about five minutes, Appellant said he would send Griffith out once Officer Gladden left the front porch. Officer Gladden refused to leave the porch. Appellant opened the door and quickly shoved Griffith out, trying to quickly shut the door. The officer blocked the door with his foot, and a brief struggle ensued before Appellant took off running through the house. Ultimately, Officer Gladden deployed his Taser to stop Appellant from running away. Appellant fell in the entryway of a bathroom. When Appellant was able to move, he immediately reached to flush the toilet. Officer Gladden saw a baggie of white powder swirling in the toilet. The officer tried unsuccessfully to retrieve the baggie.

{¶7} When police had both Griffith and Appellant in custody, they searched the house. Police found two loaded firearms, and a bag containing pills. In the kitchen officers found a syringe, bags of marijuana, and a digital scale. Among the drugs seized from the house were 2.42 grams of fentanyl, 6.33 grams of morphine, 2.04 grams of buprenorphine, .79 grams of oxycodone, and one tablet of methamphetamine.

{¶8} On August 23, 2018, Appellant was indicted by the Richland County Grand Jury with having weapons under disability, tampering with evidence, four counts of aggravated possession of drugs, and one count of possession of drugs.

**{¶9}** Trial was set for March 4, 2019. On February 27, 2019, the State provided Appellant with the names of two witnesses it intended to call at trial, including Jonathan Risser. Appellant moved to exclude the testimony of these two witnesses.

**{¶10}** On the first morning of trial, the State represented only one of the two witnesses provided in supplemental discovery, Jonathan Risser, would be testifying at trial. The State suggested since the witness was subpoenaed to appear in the afternoon, counsel could talk with the witness after jury selection. The court stated at the final pretrial in the case, counsel for Appellant had questions concerning whether 398 Newman was Appellant's residence. Prosecutor Pigg then stated he would look into this, and get back to defense counsel. Thus, Appellant was placed on notice additional evidence may be forthcoming on the issue of his residence. The court found because the names were given almost a week before trial, and counsel would have an opportunity to interview the witness prior to the witness testifying, the witnesses would be permitted to testify. Appellant did not request a continuance.

**{¶11}** The case proceeded to jury trial. Risser testified to the best of his knowledge, Appellant lived in the home at 398 Newman.

**{¶12}** Appellant was convicted as charged in the indictment and sentenced to 90 months incarceration. It is from the March 8, 2019 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

WHETHER THE TRIAL COURT ERRED IN PERMITTING ONE (1) WITNESS TO TESTIFY WHERE THE WITNESS WAS NOT DISCLOSED UNTIL FOUR TO FIVE DAYS PRIOR TO TRIAL.

**{¶13}** Disclosure of witnesses a party intends to call at trial is governed by Crim. R. 16, which provides in pertinent part:

**(A) Purpose, Scope and Reciprocity**. This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

*** 

**(I) Witness List**. Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal. The content of the witness list may not be commented upon or disclosed to the jury by opposing counsel, but during argument, the presence or absence of the witness may be commented upon.

*** 

**(L) Regulation of Discovery**.

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the

proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶14} The trial court has discretion in determining a sanction for a discovery violation. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶33, *citing State v. Parson,* 6 Ohio St. 3d 442, 445, 453 N.E.2d 689 (1983). A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶15} Three factors should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution: (1) whether the failure to disclose was a willful violation of Crim. R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Parson, supra,* at syllabus.

{¶16} In the instant case, the record does not suggest the failure to disclose Jonathan Risser as a witness was willful. Based on the information placed on the record by the trial court, the issue of whether 398 Newman was Appellant's residence came up at the final pretrial hearing in the case, when counsel represented Appellant claimed he did not live there. The prosecutor stated he would look into this and get back with Appellant. It appears from the record until this point in the proceedings, the State was

unaware Appellant intended to claim he did not live in the residence where the drugs were found, and failure to disclose earlier Risser as a witness concerning where Appellant resided was not willful.

{¶17} As to whether foreknowledge of the undisclosed witness would have benefited Appellant in the preparation of a defense, the witness was not a direct fact witness as to the crimes, but merely was called to testify as to where Appellant lived. Further, the trial court ensured counsel would have an opportunity to interview the witness prior to his testimony at trial. When counsel cross-examined the witness at trial, counsel noted he had spoken to Risser the day prior to his testimony. Risser did not testify as to any of the details surrounding the charges, and his testimony was limited to an observation Appellant appeared to be living in the home on August 1, 2018, and he first began to see Appellant at the home in 2013, or 2014. We find Appellant had adequate notice of the State's intention to call Risser to prepare a defense, particularly given the limited nature of Risser's testimony.

{¶18} We also find Appellant was not prejudiced by the late disclosure of the witness. As discussed earlier, Appellant had an opportunity to interview the witness the day before he testified. Appellant did not request a continuance to further prepare for trial. The witness's testimony was on the limited issue of whether Appellant resided at 398 Newman. Further, Risser's testimony was cumulative of the testimony of Charity Griffith. Griffith identified Appellant's house from a board diagramming the neighborhood. She testified she saw Appellant five or more times from February, 2018, through August 1, 2018, mostly at the house. She testified she cleaned the house for Appellant in exchange for drugs, or for money.

**{¶19}** We find the trial court did not abuse its discretion in allowing Jonathan Risser to testify.  The assignment of error is overruled.

**{¶20}**  The judgment of the Richland County Common Pleas Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur