[Cite as *State v. Wilson*, 2013-Ohio-3877.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-12-254 |
| | : | O P I N I O N |
| - vs - | | 9/9/2013 |
| | : | |
| LLOYD A. WILSON, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. TRD 1202861


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Worrell A. Reid, 6718 Loop Road, Centerville, Ohio 45459, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Lloyd A. Wilson, appeals his sentence and conviction in the Butler County Area III Court for failure to yield right of way when turning left.

{¶ 2} This appeal arises out of an automobile accident which occurred on May 24, 2012, at the intersection of Tylersville Road and State Route (S.R.) 747, in West Chester, Ohio. Wilson was traveling westbound on Tylersville Road and attempted to make a left turn onto southbound S.R. 747. As Wilson entered the intersection, his vehicle collided with the

vehicle of Gretchen Ramirez. Wilson was charged with failure to yield right of way when turning left, in violation of R.C. 4511.42.[1]

{¶ 3} After being continued on two occasions, a bench trial occurred on November 9, 2012. At trial, the prosecutor first called Ramirez to the stand. Ramirez testified that she was traveling eastbound on Tylersville Road, and as she entered the intersection, she had a green light. Ramirez further testified: "I just saw this this car coming out of no where [sic] and I just slammed the breaks [sic] as quick as I could," but the two vehicles made contact.

{¶ 4} Next, the state called Dan Meyer to the stand. As Meyer began to testify, Wilson objected because he was not provided a witness list notifying him that this witness would be called to testify. The trial court inquired whether a witness list had been provided. The state explained that discovery is provided over the internet and if the defendant requests a witness list then "it's automatically generated. I'm not aware of his requesting it or not." The trial court noted that Crim.R. 16(I) is mandatory and requires the exchange of witness lists even if such list is not requested. Wilson's trial counsel then requested a continuance so that the state could remedy the rule violation. The state objected to the continuance. Wilson also offered to consent to Meyer's testimony if his proposed expert witness's affidavit would be admitted into evidence.[2] After some discussion, the trial court stated the following: "Well what I'll do if you want [a] chance to talk to the witness, if the witness will talk to you I'll continue it in progress but it's not going to be continued beyond today." Wilson's counsel objected to this ruling and decided that he was not going to "avail [himself] the opportunity to

---

1. R.C. 4511.42 provides: "The operator of a vehicle * * * intending to turn to the left within an intersection * * * shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection * * * as to constitute an immediate hazard."

2. The record indicates that on November 2, 2012, just seven days before trial, Wilson filed the affidavit of Dr. George J. Shaw as an expert witness in this case. The trial court excluded the expert's testimony as Wilson failed to provide the state with the expert's report within 21 days of the trial, as required by Crim.R. 16(K). In any event, at the time Wilson suggested this curative measure, his expert was not present or available to testify.

speak to this witness" before the trial continued. Rather, he noted his objection for the record and chose to proceed on cross. The state then provided Wilson a handwritten witness list and continued with its direct examination of Meyer.

{¶ 5} Meyer testified that he was behind Wilson at the time of the accident, and he observed Wilson pull out in front of the victim and did not yield to her right of way. Meyer testified that Wilson only had a green light and not a green turn arrow when he entered the intersection.

{¶ 6} The state then called Officer Nick Gattermeyer of the West Chester Police Department to the stand. Officer Gattermeyer testified that he responded to the scene and observed the two vehicles in the middle of the intersection. Gattermeyer further explained that the damage to the vehicles was severe and "consistent with a car possibly turning in front of another and another one coming straight." Gattermeyer also testified that he specifically asked Wilson if he had a "green light or a green arrow and I asked him this question twice and he told me green light both times." After this testimony, the state rested.

{¶ 7} Wilson took the stand in his own defense. He testified that he was traveling west on Tylersville Road and he turned left when there was a "green light and green arrow." Contrary to prior testimony, Wilson stated that Ramirez was traveling southbound on S.R. 747 just prior to the accident. He stated that it was Ramirez that hit him and the point of impact was his front right wheel. Wilson also denied speaking to the police officers at the scene of the accident except to provide them with his name.

{¶ 8} Finally, Wilson called his daughter-in-law, Maureen Wizzard, to testify on his behalf. Prior to Wizzard taking the stand, Wilson's counsel who seemingly also failed to file a witness list, provided the prosecutor with a handwritten witness list. Wizzard then testified that upon arriving to the scene, she observed both cars were facing south on S.R. 747.

{¶ 9} After hearing all the evidence, the trial court found Wilson guilty and imposed a

$40 fine plus court costs. Wilson now appeals his conviction and sentence, raising one assignment of error:

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT'S OVERRULING OF APPELLANT'S OBJECTION TO THE PROSECUTOR'S FAILURE TO SUPPLY A WITNESS LIST PURSUANT TO CRIM.R. 16(I) CONSTITUTED PREJUDICIAL ERROR TO APPELLANT, AND THE JUDGMENT ENTRY AND SENTENCE OF THE COURT, FINDING THE DEFENDANT GUILTY MUST BE REVERSED.

{¶ 12} In his sole assignment of error, Wilson asserts the trial court committed prejudicial error when it allowed the testimony of the state's witness, Meyer, because his identity was not disclosed prior to trial pursuant to Crim.R. 16(I). Essentially, Wilson argues the trial court should have excluded Meyer's testimony as the sanction for the state's violation of Crim.R. 16(I). The court instead offered to continue the case "in progress" to allow Wilson's counsel time to prepare for Meyer's testimony including interviewing Meyer and possibly conducting a background check.

{¶ 13} Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 20. A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34.

{¶ 14} The overall objective of the criminal rules "is to remove the element of gamesmanship from a trial." *Darmond* at ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). Crim.R. 16 governs discovery in criminal prosecutions. *State v. Blake*, 12th Dist. Butler No. CA2011-07-130, 2012-Ohio-3124, ¶ 15. The Supreme Court of Ohio

has stated that "[t]he purpose of the discovery rules 'is to prevent surprise and the secreting of evidence favorable to one party.'" *Darmond* at ¶ 19, quoting *Lakewood* at 3.

{¶ 15} In light of these overall objectives, Crim.R. 16(I) provides: "Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." Therefore, Crim.R. 16(I) imposes an equal duty on each party to disclose the list of witnesses that will be called at trial. Crim.R. 16(I), Staff Notes. In addition, Crim.R. 16(L)(1) states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 16} When deciding whether to impose a sanction, a trial court must inquire into the circumstances surrounding a discovery rule violation and "impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Darmond* at ¶ 42, quoting *Lakewood* at paragraph two of the syllabus; *State v. Partin*, 12th Dist. Butler No. CA2012-09-189, 2013-Ohio-2858, ¶ 22. The Supreme Court has identified several factors that the trial court should consider in selecting the appropriate sanction, including the degree of prejudice to the opposing party and whether the violation was willful or in bad faith. *Darmond* at ¶ 35-36; *Lakewood* at 5; *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). Accordingly, in evaluating the trial court's exercise of discretion as to the sanction imposed for a discovery violation committed by the state, the following factors are considered: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Darmond* at ¶ 35, *Parson* at syllabus; *State v. Hale*, 119 Ohio

St.3d 118, 2008-Ohio-3426, ¶ 115.

{¶ 17} In the present case, it is clear that a discovery violation occurred as the state failed to provide Wilson a list of the witnesses it intended to call at trial.[3] After a review of the record, we find that the trial court did not abuse its discretion in selecting the sanction for this discovery violation. The record indicates that the trial court properly inquired into the circumstances surrounding the discovery violation. The trial court then considered a range of potential sanctions and offered to continue the trial in progress to allow Wilson's counsel time to interview Meyer.

{¶ 18} Moreover, it is apparent from the record that the state's failure to disclose its witnesses was not willful or in bad faith. The state explained that it has "electronic discovery" so it would have provided a witness list if defense counsel would have requested it. At the time of trial, the prosecutor was unaware if the state had provided a witness list or if Wilson had requested one. Accordingly, although the state appears to be misguided regarding its duties under Crim.R. 16(I), as there is no question the state has a duty to disclose the names of its witnesses, we cannot say that its failure to provide a witness list on this basis was willful and in bad faith. Wilson has also failed to demonstrate that foreknowledge of Meyer prior to trial would have benefited him. In fact, even though the trial court provided Wilson with an opportunity to interview Meyer and look into his background prior to Meyer testifying, Wilson declined and instead chose to "proceed on cross."

{¶ 19} Finally, although Meyer's testimony certainly harmed Wilson as it confirmed Ramirez's version of the accident, Wilson has not demonstrated that he was unfairly prejudiced as a result of the testimony. Wilson's only claim of prejudice is that without

---

3. We note that from the record it appears that Wilson also committed a discovery violation as he did not provide the state with a witness list. The trial court also allowed Wilson to provide the state with a handwritten witness list prior to allowing his witness, Wizzard to testify.

Meyer's testimony, the remaining evidence was insufficient to convict him. However, a review of the record indicates that Meyer's testimony was merely duplicative of other evidence presented by the state. Meyer only confirmed Ramirez and Officer Gattermeyer's testimony that Wilson turned left in front of Ramirez and that he only had a "green light" at the time. Accordingly, even if the trial court excluded Meyer's testimony, the outcome would have been the same. Ramirez and Officer Gattermeyer's testimony was more than sufficient for the trial court to find Wilson violated R.C. 4511.42 by failing to yield the right of way when turning left.

{¶ 20} Based on this record, the sanction imposed by the court certainly ameliorated any surprise Wilson may have faced as a result of not being previously notified that Meyer would testify at trial. It also provided Wilson with the opportunity to re-evaluate his defense strategy in light of this new witness. Wilson, however, did not employ the curative measure offered by the trial court. Wilson instead decided to proceed on cross. He now argues on appeal that Meyer's testimony should not have been considered and as a result his conviction should be reversed. The fact that defense counsel declined to pursue the curative measures offered by the trial court does not entitle Wilson to a finding that the trial court should have imposed the strictest remedy available, namely excluding Meyer's testimony. *See Partin* at ¶ 22. Although, the court is entitled, in its discretion, to exclude such testimony, it is not required to do so. *See Hale* at ¶ 114. In this case, the trial court did not abuse its discretion in allowing Meyer to testify as it considered the circumstances surrounding the discovery violation and imposed the least severe sanction that was consistent with the purpose of the rules of discovery. Accordingly, Wilson's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

- 7 -